401 S.E.2d 913

**James E. VAN CAMP and Mary Ann Van Camp**

**v.**

**OLEN BURRAGE TRUCKING, INC., a Corporation.**

**No. 19776.**

Supreme Court of Appeals of West Virginia.

Feb. 13, 1991.

Jay T. McCamic, McCamic & McCamic, Wheeling, for James E. Van Camp, Mary Ann Van Camp.

Jeffrey R. Miller, Bachmann, Hess, Bachmann & Garden, Wheeling, for Olen Burrage Trucking, Inc.

WORKMAN, Justice:

This case arises by certified question from the Circuit Court of Brooke County to resolve the issue of whether Olen Burrage Trucking, Inc. ("Burrage Trucking") is an employer subject to the workers' compensation laws of this state. Having reviewed the relevant facts and law pertaining to this issue, we conclude that Burrage Trucking lacked sufficient business contacts with the State of West Virginia to require it as the employer of James E. Van Camp ("Van Camp") to subscribe to the West Virginia Workers' Compensation Fund ("Fund").

On September 21, 1985, Van Camp, while in the employ of Burrage Trucking,[1] was operating a 1982 road commander semi-truck near Chelyan in Kanawha County, West Virginia. When a load of wood which Van Camp was hauling began falling off the truck, the truck went out of control causing a one-vehicle accident. Van Camp and his wife initiated a civil action against Burrage Trucking in the Circuit Court of Brooke County to recover for the injuries Van Camp suffered as a result of the accident.[2]

Burrage Trucking filed a motion to dismiss and a motion for summary judgment based on its position that it did not regularly employ any person for the purpose of carrying on any business in West Virginia and accordingly could not be subject to the West Virginia Workers' Compensation Act ("Act"). Van Camp then filed a motion for partial summary judgment which motion was granted by the Circuit Court of Brooke County by order dated September 14, 1989. While holding that Burrage Trucking had failed to properly subscribe to the Fund in its September 14, 1989, order, the circuit court agreed to certify the following questions to this Court:

1. Whether the defendant, Olen Burrage Trucking, Inc., was a corporation "regularly employing another person or persons for the purpose of carrying on any form of industry, service or business in this state," within the meaning of West Virginia Code § 23–2–1, at the time of the accident in this action?

2. Whether, under the laws of the State of West Virginia and the State of Mississippi, the plaintiff has the right to maintain this action where (a) the plaintiff was covered by Mississippi Workers' Compensation law and (b) the plaintiff had applied for and received Mississippi Workers' Compensation benefits for both the accident which is the subject of this action and a prior accident?

3. Whether the plaintiff was an employee subject to the West Virginia Workers'

---

1. Burrage Trucking is an interstate long-haul carrier that engages in interstate commerce in 38 states. Its corporate headquarters are in Philadelphia, Mississippi.

2. Van Camp also filed for workers' compensation benefits through the State of Mississippi and received $18,363.56 in total benefits for this same injury.

Compensation law, within the meaning of West Virginia Code § 23–2–1a?

The circuit court answered each of the above-certified questions in the affirmative.

Although three questions were certified to this Court, we find it necessary only to answer the first of these questions. That question identifies the critical issue in this matter—whether or not Burrage Trucking was a corporation regularly employing another person for the purpose of carrying on any type of business in West Virginia at the time of Van Camp's accident as contemplated by the provisions of W.Va.Code § 23–2–1 (Supp.1990). That statutory provision identifies which employers are subject to the Act. In relevant part, W.Va. Code § 23–2–1 requires that

> all persons, firms, associations and corporations regularly employing another person or persons for the purpose of carrying on any form of industry, service or business in this state, are employers within the meaning of this chapter and are hereby required to subscribe to and pay premiums into the workers' compensation fund for the protection of their employees and shall be subject to all requirements of this chapter and all rules and regulations prescribed by the commissioner with reference to rate, classification and premium payment....

In at least two prior opinions of this Court, we have identified several factors pertinent to resolving the issue of whether a corporation is subject to the West Virginia Workers' Compensation Act. In *Jenkins v. Sal Chem. Co.*, 167 W.Va. 616, 280 S.E.2d 243 (1981), we found the following facts determinative on the issue of whether the out-of-state employer was required to subscribe to the Fund: 1) the employer in question had obtained authorization to do business in West Virginia; 2) the employer operated a plant in West Virginia; and 3) the employer had hired employees on a regular basis to work at the West Virginia plant. *Id.*, 167 W.Va. at 619, 280 S.E.2d at 245. More recently, in *Fausnet v. State Workers' Compensation Comm'r*, 174 W.Va. 489, 327 S.E.2d 470 (1985), we were asked to determine whether an employee injured in Ohio was entitled to seek benefits from the Fund based on his employer's contacts with this state. In concluding that the employer's "contact with West Virginia was sufficient within the meaning of this State's workers' compensation laws to enable [the employee] to seek workers' compensation benefits in West Virginia[,]" we focused on three factors: (1) the employee was hired in West Virginia; (2) the employee had, prior to the accident in question, worked in West Virginia for the employer; and (3) the employer maintained an office in Charleston, West Virginia. *Id.*, 174 W.Va. at 493, 327 S.E.2d at 474.

When the five factors identified in *Jenkins* and *Fausnet* are applied to the facts of the instant case, each one can only be answered in the negative. At the time of the accident, Burrage Trucking had not obtained authorization to do business in West Virginia.[3] Burrage Trucking does not own any West Virginia real estate nor does it maintain any office, terminal, or other facility in West Virginia.[4] Likewise, Burrage Trucking has never hired employees in this state. Van Camp was hired from the Paris, Pennsylvania, terminal pursuant to a decision made at Burrage's corporate headquarters in Philadelphia, Mississippi. The interstate nature of the long-haul trucking business for which Burrage Trucking hired Van Camp did not involve any *intrastate* hauling whereby the same load would be picked up and later delivered within the State of West Virginia. On those few occasions when Van Camp's employment required him to drive in West Virginia, either his origination or destination was a West Virginia location, but never both. Accordingly, he cannot be said to

---

**3.** At some point subsequent to the date of Van Camp's accident, Burrage Trucking did obtain a certificate of authority which permits it to transact business in West Virginia.

**4.** Although Van Camp argued that Burrage Trucking had a Weirton, West Virginia, division, this Court finds convincing the explanation offered by Burrage that in fact the Weirton division reference pertained merely to the fact that 2–4% of Van Camp's loads were picked up at Weirton Steel which is located in Weirton, West Virginia.

have worked for Burrage Trucking *in* West Virginia on a regular basis prior to the accident at issue within the meaning of our prior line of cases on this issue. *See Fausnet*, 174 W.Va. at 493, 327 S.E.2d at 474.

■ We therefore conclude that the following factors are dispositive of the issue of whether an employer must subscribe to the Fund pursuant to W.Va.Code § 23–2–1: (1) whether the employer obtained authorization to do business in West Virginia; (2) whether the employer operates a business or plant or maintains an office in West Virginia; (3) whether the injured employee was hired in West Virginia; (4) whether the employer regularly hires other West Virginia residents to work at a West Virginia facility or office; and, (5) whether the employee in question worked on a regular basis at a West Virginia facility for the employer prior to the injury at issue. If the answer, as in this case, to each of the above questions is negative, then the employer is not required to subscribe to the Fund as he cannot be said to regularly employ a person for the purpose of operating "any form of industry, service or business in this state." W.Va.Code § 23–2–1.

We would also point out that prior to the September 1985 accident, Burrage Trucking had submitted an application on August 13, 1985, to the West Virginia Workers' Compensation Commissioner along with a $213 premium. The Fund returned the application to Burrage by letter dated January 22, 1986, stating that "[y]our company would not be required to file with the fund since there is no work of any type performed in the State of West Virginia." While such a conclusion by the Commissioner is not determinative on the issue of whether an employer is obligated to subscribe, it is certainly indicative that the Commissioner found that the employer did not have sufficient business contacts with West Virginia to require it to subscribe to the Fund.

Having determined that the employer was not doing business in West Virginia within the meaning of W.Va.Code § 23–2–1, we answer the first certified question in the negative. Given our answer to the first certified question, we find it unnecessary to proceed to the remaining two questions. This case is hereby dismissed from the docket of this Court.

Certified question answered; Case dismissed.